#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
#### JACKSON DIVISION

| | |
|---|---|
| **MARION E. HANKINS, PEGGY D. HANKINS, and JAMES F. HANKINS** | **PLAINTIFFS** |
| v. | Civil Action No. 3:08-cv-639-CWR-FKB |
| **FORD MOTOR COMPANY and JOHN DOES 1-5** | **DEFENDANTS** |

#### ORDER

Pending before the Court is Ford Motor Company's consolidated motion to exclude the testimony of warnings expert Lila Laux and motion for summary judgment on the plaintiffs' warnings claim. Docket No. 220. The plaintiffs (together, "Hankins," except where otherwise indicated) oppose the motions, Docket No. 235, and Ford has replied, Docket No. 247.

I.   *Background*

On October 19, 2005, Marion Hankins was involved in a single-vehicle accident on Highway 49 in Yazoo County, Mississippi. The cause of the accident is unknown, but the available evidence indicates that her vehicle, a 2000 Ford Expedition, veered or was steered left, right, and left again, and then rolled several times. Hankins was ejected through the sunroof and suffered severe injuries. She and her family brought suit against Ford alleging that the sunroof was defective and that Ford failed to warn them of the danger it posed, among other theories of liability.

II.   *Admissibility of the Expert Opinion*

Laux opines that Ford knew tempered sunroof glass could shatter and permit occupants to be ejected in a rollover accident, yet failed to adequately warn prospective purchasers of the danger. Docket No. 235-5, at 8-9. Her report recommends placing a warning notice on the windows of new vehicles and inside the owner's manual. *Id.* at 9. She includes a proposed warning notice in her report. *Id.* at 10. Laux also opines that Ford failed to adequately warn consumers that SUVs are at greater risk of rollover accidents than sedans. *Id.* at 8-10.

A.   *Arguments*

Ford argues that Laux's opinion regarding placing a warning sticker on new vehicles must be excluded because it is irrelevant: Hankins bought the subject vehicle used. Docket No. 221, at 3-4 and 7-9. At her deposition, and allegedly at the prompting of Hankins' counsel, Laux attempted

to add an opinion that the warning should also be placed permanently on a window; Ford seeks to exclude that opinion for being unreliable, improper, and not timely disclosed. *Id.* at 4 and 9-14. Ford then argues that Laux's opinion as to placing a warning in the owner's manual is irrelevant because it relies upon Hankins having read the owner's manual, which Ford claims did not happen. *Id.* at 14-16. Finally, Ford claims that all of Laux's opinions otherwise fail *Daubert* because they are untested and not generally accepted by industry or science. *Id.* at 16-20.

Hankins responds that even if Laux's opinion as to used vehicles is excluded, it still leaves the owner's manual warning. Docket No. 236, at 5-7. She claims that her parents read the owner's manual, such that a warning there would have been relevant and influenced their behavior. *Id.* at 8. Hankins next contends that there was no error in Laux adding an opinion during her deposition because the deposition was taken after the discovery deadline by mutual agreement. *Id.* at 9-10. Finally, she argues that Laux's opinions survive *Daubert* because her warnings need not be tested, need not be generally accepted, and are reliable based on Laux's knowledge, experience, training, and education. *Id.* at 13-20.

   *B.* *Standard of Review*

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the post-*Daubert* amendments to Rule 702. *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). That Rule now states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The purpose of the Rule is to guide the district court's gatekeeping function, helping it ensure that the jury hears expert testimony that is reliable and relevant. *See Guy*, 394 F.3d at 325. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352

2

(5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields*, 483 F.3d 313, 342 (5th Cir. 2007). The party offering the expert bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert*, the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including whether the proposed technique or theory can be or has been tested, whether it has been subjected to peer review and publication, whether its error rate is acceptable, whether the theory is generally accepted in the scientific community, and whether there are standards controlling the technique. *See Guy*, 394 F.3d at 325; *Knight*, 482 F.3d at 351. It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

The *Daubert* analysis applies to the process of the expert's conclusions, not the merits of the conclusions themselves. *Id.* The merits remain subject to attack at trial under our traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

The Fifth Circuit has quoted with approval the Seventh Circuit's observation that "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore*, 151 F.3d at 278 (quotation marks and citation omitted). The extrapolation or "leap[] from an accepted scientific premise to an unsupported one . . . must be reasonable and scientifically valid." *Id.* at 279 (citations omitted).

  *C.*  *Discussion*

It is undisputed that Laux is "a witness qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Based on her education, work experience, publications, and knowledge, the Court finds her well-qualified in the field of automotive warnings.

*See* Docket No. 235-5, at 1-2.

Ford's motion to exclude will be granted in part and denied in part. Because Hankins bought the subject vehicle used, Laux's opinion as to a warning sticker on new vehicles is irrelevant under Rule 402. It also was improper for Laux to add an opinion regarding used vehicle purchasers after consulting with Hankins' counsel during a break in her deposition. At trial, Laux may not opine about a permanent etching or sticker that would have warned used vehicle purchasers.

Nevertheless, excluding the warning stickers (both new and used) leaves intact Laux's other opinions, including her opinion as to a warning in the owner's manual. The Court finds that these opinions are reliable based on Laux's knowledge, training, and substantial experience as documented in her report [Docket No. 235-5], and that they would assist the trier of fact.

Ford's argument that Laux's proposed warning must have been tested is unconvincing in light of contrary authorities. *See Standard Fire Ins. Co. v. Broan Nutone, LLC*, No. 2:07-cv-44, 2008 WL 5560882, *7 (S.D. Miss. July 1, 2008); *Tunica Web Advertising, Inc. v. Barden Mississippi Gaming, LLC*, No. 2:03-cv-234, 2007 WL 2768914, *4 (N.D. Miss. Sept. 18, 2007). Nor must the warning itself have been generally accepted by industry and science to survive *Daubert*. *See Daubert*, 509 U.S. at 588 ("Nothing in the text of this Rule establishes 'general acceptance' as an absolute prerequisite to admissibility.").

As to the relevance and effect of a warning in the owner's manual, there is a fact dispute about the adequacy of Hankins' parents' review of the owner's manual. *See* Docket No. 235-8. This issue can be explored at trial.

III.     *Summary Judgment on the Warnings Claim*

    A.     *Arguments*

Ford advances three reasons why it is owed summary judgment on Hankins' warnings claim. First, it argues that the lack of a sunroof warning in its owner's manual could not have caused Hankins' injury, because neither Marion Hankins nor her mother testified to reading the entire manual. Docket No. 221, at 21-25. Second, Ford claims that the dangers of rollovers and ejection through the sunroof glass were open and obvious or already warned against on the sun visor and in the owner's manual. *Id.* at 25-29. Finally, it contends that the remedy Laux suggests in her proposed warning – adding a protective film to the sunroof glass – would have failed, rendering the proposed warning irrelevant. *Id.* at 29-32.

Hankins responds by pointing to affidavits from each of her parents stating that they read the owner's manual, such that she can establish that an inadequate warning caused her harm. Docket No. 236, at 22-27. She claims that the open and obvious issue is an affirmative defense that Ford must prove to a jury, and that evidence shows that the sunroof danger was not open and obvious. *Id.* at 27-29. Next, Hankins argues that Ford did not warn against the risk of tempered sunroof glass leading to ejections. *Id.* at 30. Regarding Ford's warnings as to the heightened rollover risk, she contends that the owner's manual warning was inadequate and that the sun visor warning was not actually in the subject vehicle. *Id.* at 30-32. Finally, she says Laux's proposed warning is relevant because it would allow consumers to decide whether to purchase the vehicle. *Id.* at 32-33.

Ford's rebuttal adds an argument on its open and obvious defense, claiming that because the plaintiffs had previously driven in the subject vehicle with the sunroof open, that they necessarily knew of and disregarded the risk of driving with an open portal in the top of vehicle. Docket No. 247, at 13. Ford also contends that the current absence of the sun visor says nothing about whether the sun visor contained a warning when it left Ford's hands, which is the relevant time period for its liability under Mississippi law. *Id.* at 14.

  B.  *Legal Standards*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1)-(2). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (citation omitted). The Court must "view the evidence and draw reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citation omitted).

In this diversity case, the Court applies the substantive law of Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 228 (5th Cir. 2007). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

In warnings cases, the plaintiff must prove by a preponderance of the evidence that the product (1) lacked adequate warnings or instructions, which (2) "rendered the product unreasonably dangerous to the user or consumer," and (3) was the proximate cause of the plaintiff's damages. Miss. Code § 11-1-63(a)(i)-(iii).  As the Mississippi Supreme Court has put it, the plaintiffs must "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries." *3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005).

> The legislature has defined an "adequate" warning or instruction as:
>
> one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product.

Miss. Code § 11-1-63(c)(ii). "An adequate warning is one reasonable under the circumstances. . . . To be reasonable, the warning should neither understate nor overstate the known risks associated with the use of a particular product." *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31, 55, 58 (Miss. 2004) (citations omitted).

"[T]he issue of a warning's adequacy is factual and usually will be resolved by the trier of fact." *Id.* at 57 (quotation marks and citation omitted). That said, the Mississippi Supreme Court has occasionally found a warning adequate as a matter of law. *E.g.*, *Wyeth Laboratories, Inc. v. Fortenberry*, 530 So. 2d 688, 692-93 (Miss. 1988). But it has not provided a clear standard with which to determine when a case merits such an exception. *See id.*; *Bailey*, 878 So. 2d at 57-59.

In addition to the above requirements, the plaintiff must also prove that the manufacturer knew or should have known about the danger and that the ordinary consumer would not realize the dangerous condition. Miss. Code § 11-1-63(c)(i). The product manufacturer is not liable for dangers that are, or should be, known or "open and obvious" to consumers. *Id.* § 11-1-63(e).

    C.    Discussion

        1.    Causation

Ford is correct that a manufacturer is not liable for allegedly inadequate warnings in an owner's manual when the plaintiff has not read the manual. "The presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." *Palmer v.*

*Volkswagen of America, Inc.*, 904 So. 2d 1077, 1084 (Miss. 2005) ("The plaintiffs in this case did not read the manual at all. Thus, they hardly can claim to have been harmed or misled by it.").

Ford contests how much of the owner's manual Marion Hankins and her mother read, and whether that is sufficient. But the evidence, viewed in the light most favorable to the non-movant, shows that while Marion Hankins did not read the manual, both her mother and father did. Docket No. 235-8, at 3-5. Ford points to a portion of Mrs. Hankins' deposition which went as follows:

> [Counsel for Ford]: Did you ever read the owner's manual that came with this car?
> [Mrs. Hankins]: Yes, sir. You had to, to learn how to set all of the buttons.

Docket No. 235-9, at 10. Mrs. Hankins did not testify that she only read the section pertaining to buttons. Her deposition is unclear on that point and her affidavit is more broad. Marion and Mrs. Hankins aside, Ford has not argued that Mr. Hankins failed to read the owner's manual. His affidavit plainly states that he did. Docket No. 235-8, at 3.

In light of the genuinely disputed material facts as to causation, the parties will have to take up this issue at trial.

### 2. The Open and Obvious Defense

Mississippi law recognizes that a manufacturer need not warn against open and obvious dangers.

> In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

Miss. Code § 11-1-63(e). "[A] warning of an open and obvious danger would provide no new information to the plaintiff. . . . If [the danger is] already known to the plaintiff, then the warning serves no purpose. If it is not already known to the plaintiff, then the thing warned of was not open and obvious in the first instance." *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1038-39 (Miss. 2007) (citation omitted). The open and obvious defense is an affirmative one for the defendant to prove. *Walker v. George Koch Sons, Inc.*, 610 F. Supp. 2d 551, 563 (S.D. Miss. 2009).

In failure to warn cases, an open or obvious defense is "a complete bar to recovery"; it is not subject to the comparative negligence regime. *Green*, 954 So. 2d at 1038. Open or obvious dangers

have previously included a lumber saw, moving chains in a mule boy, railroad spikes, and uneven pavement in plain view. *Id.* at 1038-39 (citations omitted).

The available evidence shows that the Hankins family did not know that SUVs like their 2000 Ford Expedition tended to roll over more than other types of vehicles. Docket No. 235-8. Nor did they know that sunroof glass could shatter and leave a hole through which a person could be ejected in a rollover accident.[1] *Id.* Further, those kinds of dangers are not open and obvious hazards such as saws, moving chains, spikes, and broken pavement that a person can observe and avoid. *Cf. Maddox*, 639 F.3d at 221 (holding that summary judgment was inappropriate in a premises liability case where the plaintiff had evidence that the chain at the edge of a loading dock had "an unobserved weakness" that caused his injuries). Summary judgment will be denied.

### 3. The Adequacy of Ford's Rollover Warnings[2]

The general rule is that "the issue of a warning's adequacy is factual and usually will be resolved by the trier of fact." *Bailey*, 878 So. 2d at 57 (quotation marks and citation omitted). Ford's argument that the rollover warning in the owner's manual was sufficient is therefore a question for the jury. The parties may also seek to resolve at trial the factual dispute of whether the subject vehicle's sun visor contained a rollover warning when it left Ford's hands.

### 4. Laux's Recommended Warning

Finally, Ford objects to the relevance of Laux's recommended warning. The last bullet point of her proposed warning reads, "You may want to ask your dealer about alternate window glazing that reduces the likelihood that the side and sunroof windows will fall out if broken allowing you to be ejected from the vehicle." Docket No. 235-5, at 10. Ford's argument is based upon Laux's deposition testimony that she went to her local car dealer, asked about an alternate window glazing, and was directed to a third-party that proposed placing a special film on the sunroof glass. Ford contends that such a film would have been useless in preventing Hankins' injury, and therefore that Laux's warning would have not mattered even if given. Docket No. 221, at 31.

There is a distinction between Laux's general warning and the specific solution proposed by

---

[1] The fact that the Hankins family occasionally rode with the sunroof open says nothing about their knowledge of the dangers, if any, of driving with the sunroof closed.

[2] Ford has not pointed to evidence indicating that it warned consumers about the dangers, if any, of having a tempered glass sunroof; therefore, this section will focus only on Ford's rollover warning(s).

the one car dealer she visited.  Her warning puts consumers on notice of an allegedly dangerous condition and suggests further inquiry.  It does not instruct consumers that a particular remedy is required, or if so, which one to choose.  Ford's argument is based upon conflating these two issues.

The question, as articulated by the Mississippi Supreme Court, is whether the plaintiffs can "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries." *Johnson*, 895 So. 2d at 166.

Laux's proposed warning plainly satisfies the first clause, in that it gives consumers additional information that was not previously disclosed by Ford.  Laux's warning cannot by itself satisfy the second clause, though, because a warning cannot force a consumer to act on its admonition.  Evidence from the plaintiff must be produced to make that showing.  Laux's deposition testimony is therefore irrelevant to that clause, because the Hankins' chosen remedy may not have been the sunroof glass film.  In fact, Mr. & Mrs. Hankins' claimed remedy is different: each has sworn that "[h]ad I been adequately warned of these dangers, I would have chosen not to purchase the Expedition or to not allow my daughter to drive it."  Docket No. 235-8, at 4-6.

In sum, Laux's recommended warning provides consumers with additional relevant information about non-obvious dangers.  The evidence of what would have happened after the warning was received was for the plaintiffs to provide, which they also have done sufficiently.  The objection is overruled.

IV.   *Conclusion*

Ford's motion to exclude Laux's testimony is granted in part and denied in part.  Ford's motion for summary judgment on the failure to warn claim is denied.

SO ORDERED, this the 15th day of December, 2011.

                                        s/ Carlton W. Reeves
                                        UNITED STATES DISTRICT JUDGE