IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MARION E. HANKINS, PEGGY D.**                                                                  **PLAINTIFFS**
**HANKINS, and JAMES F. HANKINS**

**v.**                                                                            **Civil Action No. 3:08-cv-639-CWR-FKB**

**FORD MOTOR COMPANY**                                                                              **DEFENDANTS**
**and JOHN DOES 1-5**

## ORDER

Pending before the Court are eight motions *in limine* filed by the plaintiffs (together, "Hankins") and four motions *in limine* filed by Ford. Docket Nos. 258; 260; 262; 264; 266; 268; 270; 272; 274-77. This Order rules on Hankins' motions only.

*I.*    *Scene Witnesses*

Hankins has moved to exclude speculative opinion testimony from witnesses who were present at the scene of the accident. Docket No. 258. Ford agrees in part and has stipulated that it will not seek to introduce certain evidence at trial. Docket No. 287. The Court rules on the remaining disputes as follows:

The disputed testimony of Wendy Polk regarding her personal observations of tire markings and gravel is admissible. *But see* footnote 1, *infra*.

The disputed testimony of Jay Soday regarding hamburgers and hamburger wrappers is irrelevant, more prejudicial than probative, and not helpful to the trier of fact. His testimony regarding an overheard phone call is irrelevant and not helpful to the trier of fact in part because the declarant's statement was that she had "finished talking to" Hankins and therefore was not on the phone during the crash. Docket No. 258-2, at 6. It also is hearsay without a sufficient exception and does not fall under the residual exception. *See* Fed. R. Evid. 803(1), 807.

The disputed testimony of Fred Saxton is admissible to the extent it is focused upon his personal observations. *See Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09-cv-169, 2011 WL 4590772, *9 (S.D. Miss. Sept. 30, 2011) ("Taylor and Smith can testify that they saw and photographed skid marks and gouge marks. They cannot testify as to any opinions/conclusions that the skid marks and the gouge marks were a result of over-correction of the vehicle nor can they offer opinions/conclusions as to which tire on the W.A.G. vehicle caused either the skid marks or the

gouge marks."). Testimony beyond that based on personal observation will be excluded if it "is more appropriately within the province of an expert witness." *Id*; *see also* footnote 1, *infra*.

The disputed testimony of Edward "Tri" Ferrell regarding his personal observation of the seat belt is admissible. His description of the scene is admissible in part under the *Graves* standard described above. *But see* footnote 1, *infra*.

The motion [Docket No. 258] is granted in part and denied in part.

II.     *Uniform Crash Report and Officer Zimmerman*

Hankins has moved to exclude opinions contained in the uniform crash report and certain opinion testimony from Officer Wade Zimmerman, the responding officer. Docket No. 260. Ford agrees in part. Docket No. 286 at 1 n.1.

As for the remaining disputes, Zimmerman may testify to his own personal observations at the scene. *See Graves*, 2011 WL 4590772, at *9 ("Taylor and Smith can testify that they saw and photographed skid marks and gouge marks. They cannot testify as to any opinions/conclusions that the skid marks and the gouge marks were a result of over-correction of the vehicle nor can they offer opinions/conclusions as to which tire on the W.A.G. vehicle caused either the skid marks or the gouge marks."). Testimony beyond that based on personal observation will be excluded if it "is more appropriately within the province of an expert witness." *Id.*[1]

Ford did not respond to that portion of Hankins' motion seeking redaction of the uniform crash report. Docket No. 261, at 6, 8. The parties shall confer and redact it in accordance with this Order. *See Graves*, 2011 WL 4590772, at *10. To the extent they cannot agree, each side shall submit its proposed redactions to the Court on or before January 6, 2012.

The motion [Docket No. 260] is granted in part and denied in part.

III.    *Hearsay*

Hankins has moved to exclude hearsay. Docket No. 262. Ford's response agrees in part and stipulates to the exclusion of certain testimony. Docket No. 288. It disagrees as to a portion of Jay

---

[1] Testimony about "whether there were gouge marks on the side of the road" and "whether there were skid marks" are questions of fact that Zimmerman and others may testify to. Docket No. 286, at 2. But those facts need only be presented briefly else they become cumulative and a waste of time. They will quickly become irrelevant to the primary issue in this suit, which is whether once the accident happened (and for whatever reason), the sunroof was defective for not containing Hankins. This was discussed at the pretrial conference and the Court again asks the parties to be judicious about how they utilize the jury's time.

Soday's testimony. *Id.* at 2. That testimony has already been addressed and excluded by the Court. *See* Part I, *supra*. Therefore, the motion [Docket No. 262] is granted.

IV.     Seat Belts

Hankins has moved to exclude evidence of seat belt non-use. Docket No. 264. Ford opposes the motion. Docket No. 283.

Mississippi law states that "[f]ailure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence." Miss. Code § 63-2-3. The Mississippi Supreme Court has determined that the statute is substantive and is not a statutory rule of evidence: by its own terms, "the statute does not forbid the admission of evidence of seat belt non-usage outright." *Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264, 1267 (Miss. 1999).

> This Court concludes that evidence of seat belt non-usage *may* constitute relevant evidence in *some* (but by no means all or even most) cases, so long as (1) the evidence has some probative value other than as evidence of negligence; (2) this probative value is not substantially outweighed by its prejudicial effect (See Miss. R. Evid. 403) and is not barred by some other rule of evidence and (3) appropriate limiting instructions are given to the jury, barring the consideration of seat belt non-usage as evidence of negligence.

*Id.* at 1268.

Regarding the first factor, "some probative value," the court ruled that "the fact that the rear passengers were (apparently) not wearing seat belts would appear to constitute relevant evidence for the jury to consider in understanding the nature of the crash." *Id.* at 1269. As to the third element, the court approved the following limiting instruction:

> You may consider the fact that plaintiff's 1984 Buick Regal was equipped with functional seat belts in accordance with federal and Illinois law for the purpose of determining whether the overall design of the vehicle was reasonably crashworthy. However, you may not consider plaintiff's use or non-use of seat belts in determining, one, whether the plaintiff was at fault for his own injuries and/or, two, whether plaintiff's use or non-use of his seat belt caused his injury.

*Id.* at 1268 (quoting *DePaepe v. General Motors Corp.*, 33 F.3d 737, 745 (7th Cir. 1994)). This instruction "effectively balances the manufacturer's right to establish his defense in a crash-worthiness lawsuit while at the same time precluding the jury's consideration of seatbelt non-usage as evidence of negligence." *Id.*

Regarding the three-part exception, Hankins argues that evidence of seat belt non-use has no probative value and that any such value is outweighed by its prejudicial effect. Docket No. 265, at 2-3. In the alternative, she requests that any evidence of seat belt non-use be accompanied by the above limiting instruction, and that the instruction be repeated in the court's final jury instructions, as in *DePaepe*. *Id.* at 4-5.

Ford replies that evidence of non-use "has substantial probative value regarding whether the vehicle was defective" that "is not outweighed by any potential prejudicial effect." Docket No. 283, at 2. It claims a variety of other federal courts have agreed. *Id.* at 2-3.

The Court concludes that evidence of seat belt use and non-use is "relevant evidence for the jury to consider in understanding the nature of the crash." *Hunter*, 729 So. 2d at 1269; *see also Russo v. Mazda Motor Corp.*, Civ. A. No. 89-7995, 1992 WL 309630, *5 (E.D. Pa. Oct. 19, 1992). The jury will likely be curious as to how Hankins was ejected through the sunroof; limited evidence from both parties on the seat belt issue will help them understand that occurrence.

When evidence of seat belt non-use is presented, a limiting instruction in accordance with *Hunter* will be given. It will read:

> You may consider the fact that plaintiff's 2000 Ford Expedition was equipped with functional seat belts in accordance with federal and Mississippi law for the purpose of determining whether the overall design of the vehicle was reasonably crashworthy. However, you may not consider plaintiff's use or non-use of seat belts in determining, one, whether the plaintiff was at fault for her own injuries and/or, two, whether plaintiff's use or non-use of her seat belt caused her injury.

*See also Gardner v. Chrysler Corp.*, 89 F.3d 729, 734 (10th Cir. 1996) (affirming trial court's use of a similar limiting instruction). This language may be repeated throughout the course of the trial and will be included in the final jury instructions. Jurors are presumed to follow their instructions. *See United States v. Simpson*, 645 F.3d 300, 313 (5th Cir. 2011).

V.   *Medical Records*

Hankins has moved to exclude or redact hearsay and speculative statements contained in her medical records. Docket No. 266. The statements concern whether Hankins was belted, the number of times the vehicle rolled, the distance she was ejected, and other factual information concerning the accident itself. *Id.* Ford contends that such statements are admissible business records under Rule 803(6) or otherwise admissible under Rule 803(4) because they relate to Hankins' medical

diagnosis or treatment. Docket No. 289, at 2.

### A. The Business Records Exception

To invoke the business records exception, a party must show that a "record was made at or near the time [of an act, event, condition, opinion, or diagnosis] by—or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(A). Even if this showing is made, the Court may decline to admit the record when "neither the source of information nor the method or circumstances of preparation indicate [. . .] trustworthiness." *Id.* at 803(6)(E).

The first two medical records Hankins has attached show that the sources of the information were an EMT and bystanders, respectively. Docket Nos. 266-1; 266-2. These persons did not know whether Hankins was wearing her seat belt at the time of the accident, how the accident occurred, or how her vehicle rolled. Hankins contends and Ford does not dispute that the only eyewitness who saw the accident in progress did not provide information to any first responders or later bystanders, and therefore none of that person's perceptions made it into the medical records. Because the disputed statements in these records were not transmitted by a person "with knowledge," they are not admissible via the business records exception.

Regarding the third and final medical record attached to Hankins' motion, Docket No. 266-3, the source of the accident information is unknown and does not qualify for the hearsay exception for similar reasons. *See Potts v. Martin & Bayley, Inc.*, No. 4:08-cv-15, 2011 WL 4738660, *2 (W.D. Ky. Oct. 7, 2011).

### B. The Medical Diagnosis Exception

Ford has also invoked the hearsay exception for statements made for medical diagnosis or treatment. Fed. R. Evid. 803(4). It is not clear whether this exception is applicable. The note to Rule 803(4) contemplates the patient being the declarant, not an EMT, bystander, or other person. *See id.* advisory committee's note; *Potts*, 2011 WL 4738660, *1 ("Similarly, if a party seeks to have a statement admitted under F.R.E. 803(4), only those statements made by the person seeking medical treatment are admissible.") (citation omitted); *Cimaglia v. Union Pacific R. Co.*, No. 06-3084, 2009 WL 499287, *10 (C.D. Ill. Feb. 25, 2009) ("certain non-medical material in medical records, particularly regarding a patient's reported account of the accident, may have affected how doctors treated the patient."); *see also Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1273 (8th Cir. 1990) ("Hence, to fall within the exception, the statement must be obtained from the person seeking

treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent."); *see generally* Weissenberger & Duane, Weissenberger's Federal Evidence § 803.20, at 602-03 (7th ed. 2011) [hereinafter Weissenberger].

The Fifth Circuit has held that "[a]dmissibility of a statement made to *one's* physician turns on the guarantee of the absent declarant's trustworthiness." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991) (citation omitted and emphasis added). In that case, the statements in question were made by the plaintiff to his physician, and the court did not elaborate on application of the Rule in other situations. *Id.* But that court has also utilized this exception when the statements in question were made by the patient's sister, which suggests the Eighth Circuit's "special relationship" standard. *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991).

In our case, it is undisputed that the statements in question did not come from Hankins or her family. Hankins did not and does not recall the accident, and could not have made statements to physicians about being belted or rolling a certain number of times. Ford's motion confirms that the precise speakers were unknown: the statements "were likely furnished by EMTs or other first responders working together with emergency room personnel." Docket No. 289, at 3. This is probably sufficient to deny the hearsay exception.

Even assuming away this barrier, though, it is not obvious that the substance of the statements would qualify for the exception. "Rule 803(4) does not open the door to all statements made to a physician." Weissenberger § 803.19, at 601. "The test, when examining whether statements contained in medical records relating to a patient's condition are admissible hearsay, is whether such statements are of the type pertinent to a physician in providing treatment." *Wilson*, 939 F.2d at 272 (citation omitted). "Details of the injury not necessary for treatment but serving only to suggest fault would not ordinarily qualify as an exception to the hearsay rule under Rule 803(4)." *Rock*, 922 F.2d at 277-78 (quotation marks and citation omitted) (affirming trial court's ruling that the plaintiff's statements to his doctors were inadmissible).

The evidence that all of the scene details are relevant to Hankins' treatment is thin. The information most relevant to Hankins' treatment was her ejection from the vehicle, since that implies being unbelted and also may include all of the lesser injuries that would result from merely being unbelted yet contained within the vehicle. But the parties have presented scant evidence that a physician who already knows that a patient has been severely injured by ejection from a vehicle

6

obtains new, necessary information from learning whether the patient was belted or unbelted. *E.g.*, *id.* at 278 ("The doctors stated that they only needed to know that Rock had twisted his ankle; they did not need to know the additional detail that Rock may have twisted the ankle while stepping through a rusted-out or defective step or by slipping in some grease in order to diagnose or treat Rock's injury."). The same is true for detail on how the vehicle rolled over. The number of rolls is less important than the fact that it rolled enough times to eject its passenger.

Perhaps most importantly, the medical records are not where the battle over seat belt use or non-use will be joined. The dispute will have to be framed through the witnesses, whose perceptions and statements were the source of such notations in the medical records, and whose testimony can therefore be evaluated firsthand by the jury, with the appropriate limiting instruction. The information will make its way before the jury, but through more reliable means.

The motion [Docket No. 266] is granted as to the attached records. To the extent additional medical records are necessary for this products liability case, the parties may confer and redact other secondhand information about Hankins' belted status and other facts about the scene irrelevant to medical diagnosis and treatment. Disputes shall be presented to the Court on or before January 6.

VI.   *Seizures*

Hankins has moved to exclude as irrelevant any evidence concerning seizures she suffered a number of years prior to the subject accident. Docket No. 268. Having received no response in opposition, and seeing no reason why such evidence is relevant here, the motion will be granted.

VII.   *Sam Dobbins*

Hankins has moved to prohibit Ford from questioning fact witness Sam Dobbins about irrelevant personal issues. Docket No. 270. In its response, Ford agrees it will not again question Dobbins "about his children, where his children live, how often he sees his children, his then wife, ex-wife, his divorce, why he does not live with his wife/ex-wife and children or his separation from his then wife." Docket No. 284, at 1.

By process of elimination, Ford may disagree with the motion to the extent Ford seeks to ask Dobbins about his involvement in other lawsuits. *Compare* Docket No. 271, at 1, *with* Docket No. 284, at 1. Ford argues that such a limitation "would unduly restrict Ford's right to cross-examine Mr. Dobbins concerning his credibility, bias and motive." Docket No. 284, at 2.

During Dobbins' deposition, Ford explored whether Dobbins was engaged in other legal

proceedings as a client of one of Hankins' attorneys, and explained to him that such a relationship "might affect your credibility." Docket No. 180-1, at 4-5, 15-16. No such relationship was unearthed. Ford did learn that Dobbins joined a class action seeking back wages against his former employer, but does not contend that is relevant to being a fact witness in this suit.

The Court trusts Ford does not need a judicial ruling limiting the scope of its cross-examination to relevant questions; relevance is always an available objection and Ford has experienced counsel that will shy away from off-topic questioning of fact witnesses. The stipulations are accepted and the remainder of the motion [Docket No. 270] is denied.

VIII. *Automobiles*

Hankins has moved to prohibit Ford from asking witnesses about the automobiles they drive and the features in those automobiles, arguing that such questions are irrelevant. Docket No. 272. The motion stems from Ford asking such questions to expert and fact witnesses during their depositions. *Id.* at 1. Ford claims that such questions go to credibility. Docket No. 285, at 2.

The motion will be granted as to fact witnesses, who will not opine that the sunroof glass in 2000 Ford Expeditions was defectively designed and unreasonably dangerous. It will be denied as to experts, who presumably will give such an opinion and may have their credibility undermined if they testify to driving vehicles with similar alleged defects as the ones they are critiquing in court.

IX. *Conclusion*

Docket No. 258 is granted in part and denied in part.

Docket No. 260 is granted in part and denied in part.

Docket No. 262 is granted.

Docket No. 264 is granted in part and denied in part.

Docket No. 266 is granted.

Docket No. 268 is granted.

Docket No. 270 is granted in part and denied in part.

Docket No. 272 is granted in part and denied in part.

SO ORDERED, this the 29th day of December, 2011.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE