**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**MARION E. HANKINS, PEGGY D.**                                             **PLAINTIFFS**
**HANKINS, and JAMES F. HANKINS**

**v.**                                                                              **Civil Action No. 3:08-cv-639-CWR-FKB**

**FORD MOTOR COMPANY**                                                      **DEFENDANTS**
**and JOHN DOES 1-5**

**ORDER**

Pending before the Court are four motions *in limine* filed by defendant Ford Motor Company. Docket Nos. 274-77. Each will be taken in turn.

*I.*    *Christopher Howard*

Ford argues that Christopher Howard, who is Marion Hankins' cousin, may not testify that Hankins "always" wore her seat belt, since (1) he was not "always" in the car with her, and (2) such testimony would be inadmissible character evidence. Docket No. 274. Hankins responds that "Ford's argument is a matter of semantics," contends that Howard may testify about his personal observations, and argues that the evidence goes to habit. Docket No. 279.

Hankins has the better argument. The words "always" and "never" are not verboten; it depends on the context in which they are used. Testimony that "she always wore her seat belt" is materially different from testimony that "she always wore her seat belt every time we were in the car together"; the latter is based on personal knowledge. Hankins is also correct that evidence of seat belt use goes toward habit, not a character trait. The motion is denied.

*II.*    *James Caruthers*

Ford argues that certain statements made by James Caruthers are hearsay and cumulative. Docket No. 275. Caruthers, an EMT, executed an affidavit stating that shortly after the accident, a subordinate employee inspected Hankins' vehicle and reported to Caruthers that the driver's seat belt was buckled. Docket No. 275-2, at 2-3. In her response, Hankins invokes the hearsay exception for present sense impressions and denies that the testimony is cumulative. Docket No. 280.

Federal Rule of Evidence 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is not excluded by the hearsay rule. *E.g.*, *Makuc v. American Honda Motor Co.*, 835 F.2d 389, 391-92 (1st Cir. 1987).

"The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event." *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991).

Hankins does not attempt to estimate the length of time that elapsed between the subordinate employee's identification of the seat belt condition and his reporting of that condition to Caruthers. She instead claims that the statement in question was made during the 25- or 30-minute ambulance trip to the hospital, and that a gap of that length is acceptable. Docket No. 280, at 4. Ford argues that this is too long, contending that a 15-minute delay is the maximum permitted under law "unless the declarant was still in a state of excitement resulting from the event." Docket No. 302, at 3 (quotation marks and citation omitted).

Statements "made virtually on the heels of the discovery" satisfy the Rule's contemporaneity requirement. *First State Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 42 (5th Cir. 1990). "The underlying theory of [803(1)] is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation. . . . With respect to the time element, [803(1)] recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803(1) advisory committee's note.

The affidavit and deposition excerpts confirm that the length of time that elapsed is uncertain. The statement could have been made 5 minutes after the employee's discovery, or 20 minutes after the discovery. That is not to say that Ford's legal arguments are wholly persuasive, however: they do not give adequate weight to the advisory committee's practical acknowledgment of slight lapses in reporting. Moreover, they do not acknowledge that the first opportunity for EMTs to exchange information about the accident scene may be during the ride to the hospital. It would be undesirable for a court to require first responders to interrupt colleagues – who perhaps are in the midst of evaluating, treating, and otherwise performing life-saving measures upon injured persons – in order to report details of the accident scene.

Nevertheless, Hankins must first introduce evidence on the length of time that elapsed between the discovery of the condition and its reporting to Caruthers, as well as the reasons behind that delay. The Court will then evaluate whether there is "substantial contemporaneity of event and statement" sufficient to invoke the hearsay exception. *See id.*

As for the parties final argument on this topic, the Court is inclined to agree with Ford and

exclude Caruthers' statement as cumulative of the subordinate employee's testimony. Should Ford open the door to it, though, by suggesting that the employee's testimony has not been accurately remembered over the intervening years or was fabricated well after the fact, among other possibilities, Hankins may attempt to introduce Caruthers' statement to support the employee's observation as being disclosed very shortly after the accident. The motion is granted in part and denied in part.

III.     *Nathaniel Fentress*

Ford argues that the opinions of Nathaniel Fentress, Hankins' life care expert, should be excluded because his cost estimates have not been reduced to present value and therefore inflate Hankins' claim. Docket No. 276. In response, Hankins argues that the motion is untimely and contrary to relevant and controlling authorities. Docket No. 281.

Ford's argument has been rejected. In *West v. Drury Co.*, No. 2:07-cv-215, 2009 WL 1409461, *3 (N.D. Miss. May 20, 2009), the court concluded that "if faced with the issue, the Mississippi Supreme Court would place the onus on the defendant – as the party who would receive the benefit – to demonstrate that a reduction to present value is warranted." In addition, a closer look at the Fifth Circuit case quoted by Ford reveals that it is not actually supportive. *See Foradori v. Harris*, 523 F.3d 477, 515-16 (5th Cir. 2008). The motion is denied.

IV.     *Ford's Consolidated Motion* in Limine

Ford's next pleading effectively combines 16 smaller motions *in limine* requesting the exclusion of certain evidence. Docket No. 277. For convenience, the Court will refer to each request as a separate motion, even though they are all brought within one document.

    A.     *References to Other Similar Accidents*

        1.     General Framework

Ford argues that references, evidence, testimony, and argument about prior accidents, incidents, complaints, and lawsuits involving Ford vehicles should be excluded unless the other incidents are "substantially similar" to Hankins' crash and vehicle. Docket No. 277, at 2-13. Another incident may be introduced at trial, Ford contends, if all of the following factors are "substantially similar" to Hankins' accident: the terrain, vehicle speed, orientation, occupant positioning, steering, braking, acceleration, injuries, and alleged defect. *Id.* at 4. Ford's specific objections are to relevance, prejudicial effect, waste of time, and hearsay. *Id.* at 2-13.

3

Hankins argues that Ford's definition of "substantial similarity" is too restrictive. Docket No. 282, at 1-8. She claims that because the alleged defects in her vehicle are substantially similar to the alleged defects in other accidents, she can introduce the other accidents to prove that Ford was on notice of a defective design. *Id.* at 1-3. In fact, she claims that when other accidents are introduced to establish notice, the standard is lowered to "reasonable similarity." *Id.* at 5. Factual differences unrelated to the alleged defect go to weight, not admissibility, she contends. *Id.* at 2.

"Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of defective design." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986); *see Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980) ("Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."). "The question of admissibility of substantially similar accidents is necessarily determined on a case-by-case basis, with consideration to be given to any number of factors, including the product or component part in question, the plaintiff's theory of recovery, the defenses raised by the defendant, and the degree of similarity of the products and of the other accidents." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 426 (5th Cir. 2006).

"Substantial similarity does not require an exact match." *Green v. Schutt Sports Mfg. Co.*, 369 Fed App'x 630, 638 (5th Cir. 2010) (unpublished). The Fifth Circuit has dismissed as "disingenuous[]" the argument that all accidents are unique and therefore no prior accidents are admissible, declining to adopt "such a narrow and unrealistic view of the matter." *Jackson*, 788 F.2d at 1083. It instead has ruled that "[t]he 'substantially similar' predicate for the proof of similar accidents is defined, again, by the defect (or, as we have also termed it, the product) at issue." *Id.* In this way the federal standard differs from the Mississippi standard cited by Ford. *See Noah v. General Motors Corp.*, 882 So. 2d 235, 238 (Miss. App. 2004).[1]

---

[1] There is some disagreement about whether the standard is lowered to "reasonable similarity" when the prior accidents are used to prove notice only. Several product liability cases have certainly held as much. *Johnson v. Ford Motor Co.*, 988 F.2d 573, 580 (5th Cir. 1993); *Willis v. KIA Motors Corp.*, No. 2:07-cv-62, 2009 WL 2351766, *1 (N.D. Miss. July 29, 2009); *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03-cv-94, 2007 WL 4624613, *3 (S.D. Miss. Aug. 3, 2007). Other decisions have characterized the lower standard as applicable only to negligence causes of action. *McGonigal v. Gearhart Indus., Inc.*, 851 F.2d 774, 778 (5th Cir. 1988) ("In *Jackson*, we relaxed the requirement of similarity for introducing evidence of other accidents in negligence cases."). The

The authorities reveal a less restrictive view of substantial similarity than Ford's proposed definition. A prior accident need not be effectively identical to the subject accident; the caselaw instead focuses on the similarity of the alleged defects, with correspondingly less weight given to variables like the terrain. Evidence of prior accidents will be admitted when an adequate foundation has been laid to establish that the prior defects are substantially similar to those alleged in our case. The Court will clarify now that it may be acceptable to discuss a prior rollover accident involving a different Ford vehicle than Hankins' 2000 Ford Expedition, as long as (1) a proper foundation has first established the substantial similarity of the allegedly defective sunroof glass and sunroof attachment system in that other vehicle, and (2) the evidence is proffered for a legitimate purpose.

Most of Ford's specific objections are unavailing. The relevance of prior similar accidents has already been discussed. *E.g.*, *Ramos*, 615 F.2d at 338-39; *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03-cv-94, 2007 WL 4624613, *3 (S.D. Miss. Aug. 3, 2007). Evidence of prior similar accidents is not necessarily unfairly prejudicial, as that term is defined. *Brazos River*, 469 F.3d at 427 ("'Unfair prejudice' as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party."). There also is no hearsay problem with referencing pleadings from prior similar cases; they establish the existence of allegations, not the truth of the matter. *Willis v. KIA Motors Corp.*, No. 2:07-cv-62, 2009 WL 2351766, *4 (N.D. Miss. July 29, 2009); *Noah*, 882 So. 2d at 239 ("Plaintiff made no argument the contents of the reports were truthful. They were offered to show GMC was aware the reports had been made."). Last, but not least, the Court will not permit the trial to deteriorate into a series of mini-trials about prior similar accidents. As the Seventh Circuit has written,

> [t]he occurrence of other accidents at the curve, and the range of circumstances that might have caused them, is not so complex a subject as to require an overly expansive evidentiary record. [The plaintiff] could establish the pertinent facts regarding these accidents without delving deeply into the circumstances of each occurrence, and [the defendant] similarly could identify the potential distinctions between those accidents and the [plaintiff's] accident as well as the types of conditions besides the road surface that might have contributed to the other accidents without having to litigate who was at fault in each instance. As always, the court remains free to establish reasonable limits on this line of inquiry in order to prevent

---

original discussion in *Jackson* is somewhat vague on this issue. *Jackson*, 788 F.2d at 1083. To the extent a ruling on this issue is necessary, this Court is inclined to adopt the former view.

it from becoming a sideshow.

*Mihailovich v. Laatsch*, 359 F.3d 892, 913 (7th Cir. 2004).  Here, the Court trusts that counsel for both sides will keep references to prior similar accidents brief and to their intended, limited purpose.

        2.     *Moore* and *Marroquin*

Ford specifically argues against the expected introduction of *Moore v. Ford*, an Indiana state court case, and *Marroquin v. Ford*, a Texas state court case, arguing that the accidents and injuries in those cases were very different from our own.  Docket No. 277, at 5-6; *see TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201 (Ind. 2010).  Hankins disagrees, arguing that both involved Ford SUVs that rolled over and severely injured passengers when tempered glass broke and permitted ejection or partial ejection.  Docket No. 282, at 3-4.

As a result of the Order dismissing Hankins' negligence-based claims [Docket No. 299], her remaining claims are brought pursuant to the Mississippi Products Liability Act ("MPLA").  The MPLA "speaks only of dangers known as of the time the product leaves the control of the manufacturer or seller."  *Noah*, 882 So. 2d at 239 (citing Miss. Code. § 11-1-63(a)).  The problem with admitting the *Moore* and *Marroquin* cases for the purpose of establishing that Ford was put on notice of defective glass and sunroof systems is that those accidents occurred after Hankins' vehicle left the control of the manufacturer or seller.  While they notified Ford of certain alleged defects, under Mississippi law they are not adequate for that purpose as to Hankins.  The MPLA does not establish a duty for a manufacturer or seller to warn consumers after the sale of a product.  *Palmer v. Volkswagen of America, Inc.*, 905 So. 2d 564, 601 (Miss. App. 2003); *Noah*, 882 So. 2d at 239.  These cases cannot be used by Hankins to prove that Ford was on notice of a dangerous condition.

Evidence inadmissible for one purpose may be admissible for another purpose, though.  When presented with a similar dispute, Judge Pepper in the Northern District ruled that evidence of other similar incidents that could not be used to prove notice could "be relevant to establish background information during the plaintiff experts' testimony—e.g., basis of experience and benchmark data used to contribute to opinions."  *Willis*, 2009 WL 2351766 at *4.  In such instances counsel should keep the elicited testimony limited to its intended purpose.

The motion is granted in part and denied in part.

    *B.*     *References to Other Recalls or Defects*

Ford argues that Hankins should not be permitted to reference or present any evidence of recalls, technical bulletins, or defects in other vehicles. Docket No. 277, at 13-14. It mentions Ford Pintos, certain Ford Explorers, and very specifically the recalled RNS4G buckle that was present in 2001 Ford Expeditions. *Id.* Hankins agrees not to present evidence of recalls, including the RNS4G recall, but disputes the remainder of the motion as vague and contrary to controlling caselaw. Docket No. 282, at 8-12.

Accepting the stipulation as to recalls, the remainder of the motion is denied. First, the motion is insufficiently specific. *See Riley v. Ford Motor Co.*, No. 2:09-cv-148, 2011 WL 3273592, *3 (S.D. Miss. July 29, 2011) ("None of these documents are currently before the Court. Therefore, the Court can not assess their admissibility.") In addition, Hankins' experts relied upon glass-related testing of the Ford Pinto to support their opinions relating to tempered glass. *See* Docket Nos. 233-4, at 82; 233-22, at 44-45 and 51-52; 233-24, at 5. These tests are relevant to the claims in our case. There is no indication Hankins will mention the Ford Pinto for an improper purpose, much less suggest that because the Ford Pinto was alleged to be defective, that her own 2000 Ford Expedition was defective. Such an attempt would be as illogical as it would be irrelevant.

  *C.* *Seat Belt Defects*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning or alluding to any alleged defect in the subject vehicle's seat belts. Docket No. 277, at 15-16. Hankins disagrees, claiming that she may elicit testimony about seat belt use based on personal observation and may rebut Ford's expected affirmative defenses regarding seat belt non-use. Docket No. 282, at 13-14.

The Court ruled on the acceptable role of seat belt evidence in its Order on Hankins' motions *in limine*. Docket No. 305, at 3-4. In summary, limited seat belt evidence may be presented to help the jury understand the nature of the crash. *Id.* at 4. The following limiting instruction will be given with such evidence:

> You may consider the fact that plaintiff's 2000 Ford Expedition was equipped with functional seat belts in accordance with federal and Mississippi law for the purpose of determining whether the overall design of the vehicle was reasonably crashworthy. However, you may not consider plaintiff's use or non-use of seat belts in determining, one, whether the plaintiff was at fault for her own injuries and/or, two, whether plaintiff's use or non-use of her seat belt caused her injury.

*Id.* at 4.

The first sentence of that limiting instruction – that the vehicle contained "functional seat belts in accordance" with federal and state law – accommodates Ford's concern that the jury will think Hankins has a claim for a defective seat belt. The second sentence addresses Hankins' concern as to the proper role of such evidence. In light of the prior Order, the motion is denied.

   D. *Ford's State of Mind*

Ford seeks to prevent Hankins' witnesses from testifying about Ford's state of mind and/or knowledge, asserting, among other things, that "Plaintiffs' expert witnesses . . . have never worked at Ford." Docket No. 277, at 17. Hankins opposes the motion, claiming that it is vague and also incorrect, since two of her witnesses have worked at Ford. Docket No. 282, at 14-16.

A similar motion was resolved reasonably by Judge Jordan several years ago:

> Although Ford is correct that witnesses may not speculate as to its state of mind, a witness may be allowed to testify about conclusions Ford reached or what Ford should have known based on its own documents and data. The line between what is admissible and not admissible will depend in large part on the specific questions and responses, and the Court cannot rule in limine on this matter.

*Bradley*, 2007 WL 4624613 at *3. This reasoning is adopted and the motion is denied.

   E. *Evidence of the Parties' Financial Condition*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning its size, wealth, finances, and sales figures, among other things. Docket No. 277, at 18. Hankins claims that such evidence is admissible and specifically that "evidence of Ford's financial condition is relevant to show that alternative designs were economically feasible." Docket No. 282, at 17.

The scope of Ford's motion is rather broad and may impede stray references to facts within common knowledge, like the fact that Ford is a large company that sells many cars each year. That kind of general statement is not prejudicial. In that sense, the motion is denied.

As to the presentation of specific evidence of wealth and net worth, that evidence is relevant to a determination of punitive damages, if the case should reach that stage. *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1102 (Miss. 1992) ("As a general rule, evidence of the wealth or financial condition of the defendant is admissible upon the issue of the amount of punitive damages that may be awarded against him.") (citation omitted); *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06-cv-489, 2008 WL 3050417, *2-3 (S.D. Miss. July 25, 2008) ("Any evidence regarding State Farm's net

worth would only be admissible in any second phase of trial. . . . Plaintiffs are not, however, precluded from mentioning the prospect of punitive damages in jury *voir dire*, but solely for the purpose of inquiring whether prospective jurors would be willing to consider an award of punitive damages if such an award is justified based upon the evidence and the law, as instructed by the Court.").

The question of whether financial evidence may be used during the liability phase is more difficult to resolve. Part of the answer depends on the purpose of its introduction. Obviously, a plaintiff may not present evidence of a defendant's wealth to appeal only to the jury's sympathy.

Here, Hankins wishes to use financial evidence to prove the economic feasibility of her alternative designs. The MPLA does not expressly require proof of economic feasibility. It states that "[a] feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers." Miss. Code § 11-1-63(f)(ii).[2] The question is whether the idea of economic feasibility is inherent in the words "utility, usefulness, practicality, or desirability." *Id.* The Court finds that it is not. Nor has Hankins established through caselaw that she must prove economic feasibility: the cases she cites for that proposition do not apply or interpret Mississippi law. Hankins may be able to argue at trial that the vehicle's "utility, usefulness, practicality or desirability" would not be impaired if designed differently without alluding to specific financial evidence.

The Court presumes that Ford's arguments on this point apply with equal force to Ford. If financial evidence is improper to show the economic feasibility of Hankins' alternative designs, it is also improper if used by Ford to show the economic <u>in</u>feasibility of those designs.

The motion is granted as to the liability phase and denied as to general statements within common knowledge and the punitive damages phase.

### F. *Opinions as to Malice or Gross Negligence*

Ford seeks to exclude any reference, evidence, testimony, or argument that Ford's actions rise to the level of "malice" or "gross negligence." Docket No. 277, at 18. Hankins claims that with a proper foundation an expert may testify on ultimate issues. Docket No. 282, at 17-18.

---

[2] In contrast, Louisiana law requires the plaintiff to prove that her "alternative design . . . was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality." La. Rev. Stat. § 9:2800.59(A)(3).

The request is overbroad. Hankins may make opening and closing arguments that Ford's actions were done with malice or gross negligence; arguments of counsel are not evidence and the jury will be instructed as much. The motion is denied as to "reference" and "argument" about malice and gross negligence during opening and closing statements.

The question of eliciting testimony on ultimate issues meant for the jury is another matter. Rule 704 permits experts to testify to ultimate issues, but not legal conclusions. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). The best recent analysis on this issue comes from *Hobbs v. Legg Mason Inv. Counsel & Trust Co.*, No. 3:09-cv-9, 2011 WL 304421, *4-5 (N.D. Miss. Jan. 25, 2011), which held that a smart attorney "may clean up otherwise inadmissible expert testimony by merely asking a different question" – i.e., one more carefully worded in terms of the facts. *Id.* at *5; *see also Owen*, 698 F.2d at 240. In *Hobbs*, Judge Aycock declined to exclude the expert testimony before trial and said objections would be considered on a case-by-case basis. *Hobbs*, 2011 WL 304421, at *5.

This Court has previously cited with approval Judge Aycock's analysis. *Stogner v. Belk Department Stores, LP*, No. 3:10-cv-146, 2011 WL 1627020, *2 (S.D. Miss. Apr. 27, 2011). It will adopt her reasoning and deny the motion, cautioning counsel for Hankins to frame the questions around the evidence.

        *G.*      *Amount of Expert Compensation*

Ford seeks to exclude evidence regarding the amount of compensation paid to its experts by itself and all other vehicle manufacturers, other than those sums paid in the present case. Docket No. 277, at 18-19. Hankins agrees in part and asks that the same prohibition be applied to both sides. Docket No. 282, at 18. She disagrees, though, as to asking experts about who paid for certain studies and tests undergirding their conclusions in this matter. *Id.* at 18-19.

Because the parties agree in part about expert compensation, the Court will accept their agreement and apply it to both sides.

As to Hankins' specific disagreement, Ford's motion speaks to amounts, not sources, and therefore does not seek to exclude evidence of who paid for testing underlying each expert's conclusions, which may or may not go to credibility. *See, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 n.17 (2008) ("Because this research was funded in part by Exxon, we decline to rely on it."); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 61 (2d Cir. 1992); *Snyder v. Secretary of*

*Health and Human Servs.*, No. 01-162V, 2009 WL 332044, *18 (Fed. Cl. Feb. 12, 2009). The remainder of the motion is therefore denied.

  *H.* *Victims*

Ford seeks to exclude any reference, evidence, testimony, or argument referring to "victims," arguing that the term improperly suggests criminality and is inflammatory. Docket No. 277, at 19. Hankins opposes the motion, citing a variety of cases referring to persons injured by torts as victims. Docket No. 282, at 19.

  Judge Starrett recently denied a similar motion, stating:

> More importantly, the term "victim"—when afforded its plain meaning—does not necessarily imply criminal wrongdoing. Plaintiffs claim that they were victims of Defendants' negligence, and Plaintiffs' counsel should be free to present Plaintiffs' case in that light. . . . Nonetheless, the Court advises all counsel of record that it will not allow grandstanding, theatrics, and gamesmanship in the courtroom.

*Riley*, 2011 WL 3273592 at *2. This reasoning is persuasive. The motion is denied.

  *I.* *Post-Manufacturing Evidence and Evidence of Other Vehicles*

Ford moves to exclude evidence that post-dates the manufacture of the subject vehicle and also moves to exclude evidence concerning vehicles that are not the subject vehicle. Docket No. 277, at 20-22. Its objections are to relevance and prejudicial effect. *Id.* Hankins responds that Ford's request does not specify the evidence it disputes and also presents an inaccurate interpretation of Rule 407. Docket No. 282, at 20-25.

This Order contains rulings on several issues that overlap with the current request. *E.g.*, Part IV(A)(1), *supra* (discussing evidence of substantially similar accidents involving vehicles other than 2000 Ford Expeditions); Part IV(J), *infra* (discussing relevance of evidence derived in part from vehicles other than 2000 Ford Expeditions). These examples show that evidence from other vehicles can be relevant for a particular purpose. Specific disagreements in this vein can be taken up at trial.

Regarding other issues, the motion does not present the Court with enough information to understand the nature of the expected evidence and the purpose of its introduction. *See Riley*, 2011 WL 3273592 at *2-3. Ford may make its specific objections at trial. The motion is denied.

  *J.* *The Ford Pinto and Other Major Product Liability Suits*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning the Ford Pinto and other major product liability lawsuits. Docket No. 277, at 23. Hankins opposes the

11

motion because her experts either relied upon tests from the 1970s conducted on glass in the Ford Pinto, or were involved in such tests. Docket No. 282, at 25-26; *see* Part IV(B), *supra*. She also contends that the requested prohibition on referring to other product liability suits is vague. *Id.*

The motion is denied. Ford's *Daubert* motions challenging Hankins' experts did not argue that the underlying tests involving Ford Pintos were concerning. Hankins' experts may continue to rely upon and mention those tests as appropriate. Counsel for Hankins should not need a ruling instructing them to keep references and evidence relevant to the facts and issues in this case.

   *K. Documents Not Produced by Ford*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning documents it did not produce to Hankins' counsel in this action. Docket No. 277, at 23. Hankins agrees not to argue that Ford failed to produce documents, barring some later awareness of a discovery violation. Docket No. 282, at 282. She objects "to the extent this request seeks to preclude Plaintiffs from referencing or offering into evidence documents that they obtained from third parties." *Id.*

It is not clear how Ford's motion should be read. If, under one interpretation, the parties wish to agree not to argue before the jury that their opponent refused to turn over some document, they may stipulate as much. Under a different interpretation, though, there is no obvious reason why both parties should be prohibited from attempting to introduce evidence received from third parties or from Ford outside of this litigation. The motion is denied.

   *L. Ford's Corporate Representative*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning the absence or identity of Ford's corporate representative at trial. Docket No. 277, at 23-234. Hankins disagrees, claiming that she "should be permitted to comment on whether Ford has a corporate representative present at trial in order to present a complete picture of who the parties are." Docket No. 282, at 27.

There is disagreement within the judiciary on this issue. As one district court recently put it, "if no corporate representative is present at counsel table, said absence is fodder for comment by plaintiff since it is customary for such a person to be present. Certainly, if plaintiff was never present in the court room Bayer would feel compelled to comment." *In re Yasmin*, No.3:09-md-2100, 2011 WL 6740391, *11 (S.D. Ill. Dec. 22, 2011). Other courts, though, have ruled that "[t]he

12

presence, absence, or identity of Defendants' corporate representatives is wholly irrelevant to Plaintiffs' claims." *Riley*, 2011 WL 3273592 at *3; *see Ray v. Ford Motor Co.*, No. 3:07-cv-175, 2011 WL 6183099, *6 (M.D. Ala. Dec. 13, 2011).

In our case, counsel for Hankins may not comment on the absence, if any, of Ford's corporate representative before and during the liability phase. Should the case go to punitive damages, though, the restriction is lifted. The motion is granted in part and denied in part.

   *M. Post-Sale Duty to Warn*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning a post-sale duty to warn consumers, issue a recall, or perform other actions. Docket No. 277, at 24. Hankins disagrees, arguing that post-sale duties were relevant to her "non-MPLA punitive damages and negligent failure to warn claims." Docket No. 282, at 27.

Hankins' non-MPLA claims have since been dismissed; this case is proceeding to trial with MPLA claims only. Docket No. 299. As discussed earlier in this Order, post-sale duties are not relevant to MPLA claims. *See* Part IV(A)(2), *supra* (citing Miss. Code. § 11-1-63(a)). The motion is granted.

   *N. Exclusion of Evidence*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning its motions to exclude certain evidence from being presented at trial. Docket No. 277, at 24-25. Hankins agrees and asks that the motion be applied to both sides. Docket No. 282, at 27-28. The motion is granted and applied to all parties.

   *O. Alleged Defects Not Already Raised*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning alleged defects that were not pled in the complaint or otherwise timely disclosed by experts. Docket No. 277, at 25. Hankins disagrees with the precise wording of the motion. Docket No. 282, at 28. The motion is denied in its current form, without prejudice to Ford's right to object at trial should Hankins deviate from her claims.

   *P. Discovery Disputes*

Ford seeks to exclude any reference, evidence, testimony, or argument concerning discovery, discovery disputes, pretrial motions, or rulings from this and other cases. Docket No. 277, at 25-26. It focuses on the irrelevance and prejudicial effect of mentioning discovery disputes at trial. *Id.*

13

Hankins agrees and requests that such a prohibition be applied to both sides. Docket No. 282, at 28. The motion is granted as to both parties.

V.   *Conclusion*

    Docket No. 274 is denied.

    Docket No. 275 is granted in part and denied in part.

    Docket No. 276 is denied.

    Docket No. 277 is granted in part and denied in part.

    SO ORDERED, this the 20th day of January, 2012.

                                                          s/ Carlton W. Reeves
                                                          UNITED STATES DISTRICT JUDGE